**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Anacapa Technology, Inc. a Nevada corporation, as assignee of Anacapa Nevada, Inc., a Nevada corporation,**

**Plaintiff,**

**v.**

**ADC Telecommunications, Inc. a Minnesota corporation,**

**Defendant.**

**Civil No. 01-729 (DSD/SRN)**

**ORDER**

---

Norman J. Baer, Esq., on behalf of Plaintiff

Randall E. Kahnke, Esq., on behalf of Defendant

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on Plaintiff's Motion for a Revised Scheduling Order (Doc. No. 60); and Defendant's Motion to Compel Production of Documents (Doc. No. 61-1); and to Maintain Attorneys'-Eyes-Only Designation Under Stipulated Protective Order (Doc. No. 61-2). This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

The parties and this Court are well aware of the background of this case. Accordingly, it need not be described in detail here.



JAN 2 2 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. PLAINTIFF'S MOTION FOR A REVISED SCHEDULING ORDER

Anacapa requests a revised scheduling order that will allow the parties to proceed with all aspects of the case and that will establish a trial ready date in June of 2003. ADC, on the other hand, argues that the bifurcated approach should be maintained.

A dispositive motion is now before the Honorable Judge David S. Doty. Within five (5) days after Judge Doty rules on the dispositive motion, the parties are hereby ordered to contact this Court's chambers and schedule a pretrial conference for the issuance of a new scheduling order. Prior to the pretrial conference, the parties shall submit proposed scheduling orders to this Court. The new scheduling order will not allow for phased or bifurcated discovery. Rather, discovery shall proceed a pace on all matters, and the parties shall craft their proposed scheduling orders accordingly.

## II. DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

ADC's Motion to Compel Production of Documents is denied as moot. The parties agreed at the hearing on this matter that, if there would be no mention of the Keptel documents and the "mess in the marketplace" theory on a motion for summary judgment, then ADC would withdraw its motion to compel those documents. Also, the parties agreed at the hearing that Anacapa has searched through all its records and provided ADC with all documents relating to its communications with ADC.

## III. DEFENDANT'S MOTION TO MAINTAIN ATTORNEYS'-EYES-ONLY DESIGNATION UNDER THE STIPULATED PROTECTIVE ORDER

Under the Stipulated Protective Order, the designation "Confidential Information Under

Protective Order–Counsel Only" (hereinafter referred to as Attorneys'-Eyes-Only, AEO) may be used when a party produces a document that is "highly sensitive" and contains the following: future business plans; market forecasting data; sales and marketing strategies; information regarding non-public business transactions; profitability, customer-specific royalty and sales data; domestic and international tax structuring; non-published research activities; non-commercialized products; pending, non-public patent applications and related prosecution documents; and non-published research reports and data. Thus, the document must contain information falling into one of the above categories, and the information must be highly sensitive. Furthermore, "the producing party shall bear the burden of establishing the propriety of any challenged designation." (Stip. Protective Or. ¶13).

Anacapa has challenged many of ADC's AEO designations. The AEO designations of the following documents and deposition testimony are not being challenged and can remain so designated:

> ADC 9717-9789, 9845-9866, and 11062-11063.
> Gregory Daily deposition testimony at page 166, line 8, lines 21-22; page168, line 20; page 169, line 14; page 222, lines 1-3; and page 227, lines 3-21.

(Pl.'s Mem. in Opp. to ADC's Mot. to Maintain AEO Designation, at 16).

What follows is a review of each challenged AEO document/testimony and a ruling on the document/testimony's AEO status.

### A. <u>Challenged Documents</u>

(1) ADC documents with Bates numbers 9790-9844 concern a patent application for an Electronic Equipment Enclosure with Serial Number: 9/916.522. This patent application has been expressly abandoned. (ADC 9790-9792) ("Applicant hereby expressly abandons the above-

identified [Serial No.:09/916,522] patent application."). Therefore, it may not be designated AEO.

(2) ADC documents with Bates numbers 9893-9896 concern product diagrams and composites. An exact copy of these documents was produced by Special Product Company (SPC) to Anacapa without an AEO designation. (Baer Supp'l Aff. Ex. 81). Therefore, the documents are not highly sensitive and may not be designated AEO.

(3) ADC documents with Bates numbers 9898-9901 concern product diagrams and composites. An exact copy of these documents was produced by SPC to Anacapa without an AEO designation. (Baer Supp'l Aff. Ex. 81). Therefore, the documents are not highly sensitive and may not be designated AEO.

(4) ADC documents with Bates numbers 9903-9909. An exact copy of these documents was produced by SPC to Anacapa without an AEO designation. (Baer Supp'l Aff. Ex. 81). Therefore, the documents are not highly sensitive and may not be designated AEO.

(5) ADC documents with Bates numbers 10496-10581 have been voluntarily changed from AEO to "Confidential." (Def.'s Mem. in Support of Mot. to Maintain AEO Designation, at 26).

(6) ADC documents with Bates numbers 10697-10714 is a distribution agreement between SPC and Trinet Communications, Inc. ADC has treated these documents as AEO because it reveals one of the customers to whom SPC is authorized to sell the GEN 2, and the revelation of such information and agreement to Anacapa's business persons could be used to ADC's competitive disadvantage. Unfortunately for ADC, through non-AEO documents and testimony, Anacapa already knows all of this information. Anacapa knows that SPC and Trinet

have a distribution agreement. (Baer Aff. Ex. 82). Anacapa knows that such distribution agreements authorize SPC to sell the GEN 2. (Baer Aff. Ex. 63 at pp. 25-27, 82). Finally, Anacapa already has a standard distribution agreement between SPC and Comstock Telecom that appears to be largely identical to the SPC/Trinet distribution agreement. (Baer Aff. Ex. 46). Accordingly, ADC documents 10697-10706 are not highly sensitive and may not be marked AEO. ADC documents 10707-10717, however, delineate pricing and product information specific to the SPC/Trinet distribution agreement, and, therefore, these documents shall maintain the AEO designation.

(7) ADC documents with Bates numbers 10715-10721 is a letter from William Weimer to SPC and SPC's counsel. Only certain portions of this letter are designated AEO. (Def.'s Mem. in Support of Mot. to Maintain AEO Designation, at 27).

The second bullet point on 10717 states that sales of the T-Max enclosure are discontinued. Anacapa, however, already knows, through testimony with Mr. Laetsch present, that sales of the T-Max enclosure have ceased. (Baer Supp'l Aff. Ex. 83, at 33-36, 53-54). Moreover, ADC, by failing to make any argument other than stating such information is highly sensitive, has failed to carrying its burden of establishing the propriety of the AEO designation. Therefore, the second bullet point on 10717 does not contain highly sensitive information and cannot remain AEO.

The third bullet point on 10718 discusses mere generalities about SPC's product development program. ADC 10718 ("SPC continues to develop products for the telecommunications market."). It also explains that ADC understands that SPC will not make use of Anacapa's confidential information in SPC's products. The general nature of the material

is clearly not highly sensitive. Moreover, the fact that ADC states that it understands that SPC will not use Anacapa confidential information is not highly sensitive and is directly relevant to the cure issue. Accordingly, the third bullet point on 10718 cannot remain AEO.

The fourth bullet point on 10718 concerns SPC product brochures. ADC argues that such information constitutes "future business plans" and "sales and marketing strategies." Even if the information in the fourth bullet falls into such categories, the information is not so highly sensitive as to warrant an AEO designation. The bullet merely states whether three products are going to be included in the brochures. It does not contain planning or strategy information such as how SPC plans to utilize a specific strategy to appeal to certain customers or infiltrate a particular market. Moreover, the brochures were to be used in July or August of 2002, and, therefore, are likely already public. Accordingly, the fourth bullet point on 10718 cannot remain AEO.

The third bullet point on 10719 generally states that SPC has three employees who sell the Generation 2 enclosure. It also explains that the SPC sales people are to explain to customers that the Generation 2 is an ADC product. In the context of this case, such information is simply not highly sensitive. Moreover, ADC, by failing to make any argument other than stating such information is highly sensitive, has failed to carrying its burden of establishing the propriety of the AEO designation. Therefore, the third bullet point on 10719 cannot remain AEO.

The fourth bullet point on 10719 simply states that Mr. Marosfalvy intended to go to a trade show but did not intend to show any products at the show. This is hardly highly sensitive information. Moreover, ADC, by failing to make any argument other than stating such information is highly sensitive, has failed to carrying its burden of establishing the propriety of

the AEO designation. Therefore, the fourth bullet point on 10719 cannot remain AEO.

The fifth bullet point on 10719 states that SPC is advertising its products in the Outside Plant Journal and is similar to the fourth bullet point on 10718. Again, this information does not contain any marketing strategy. Rather, it states what anyone who subscribes to or purchases the Outside Plant Journal already knows–that SPC advertises its products in such journal. Moreover, ADC, by failing to make any argument other than stating such information is highly sensitive, has failed to carrying its burden of establishing the propriety of the AEO designation. Therefore, the fifth bullet point on 10719 cannot remain AEO.

The sixth bullet point on 10719 only states that SPC holds the inventory of the Generation 2 enclosure in Missouri. This is clearly not highly sensitive information. Moreover, ADC, by failing to make any argument other than stating such information is highly sensitive, has failed to carrying its burden of establishing the propriety of the AEO designation. Therefore, the sixth bullet point on 10719 cannot remain AEO.

The third bullet point on 10720 states that SPC has not filed any new patent applications since November of 2001. ADC argues that this information constitutes "future business plans" and "non-public business transactions." Such an argument is unavailing. First, the information does not state any future business plan whatsoever; rather, it states that SPC has not filed a patent application. Second, the information does not relate to any business transaction; indeed, the information makes clear there was no business transaction. Therefore, the third bullet on 10720 cannot remain AEO.

(8) ADC document with Bates number 10821 is an email from ADC rejecting certain enclosure orders made by SPC. Anacapa is already aware, through non-AEO testimony and with

Mr. Laetsch present, that ADC has been rejecting orders for the Generation 2 enclosure made by SPC. (Baer Aff. Ex. 62, at 50-51). Moreover, ADC, by failing to even address document number 10821, has failed to carrying its burden of establishing the propriety of the AEO designation. Therefore, ADC document 10821 cannot remain AEO.

(9) ADC documents with Bates numbers 11002-11003 concern SPC's (Hans Marosfalvy) response to William Weimer's letter (ADC 10715-10721). Document number 11002 contains some irrelevancies and then states that SPC was not given an explanation as to why ADC rejected some of its orders of the Generation 2 enclosure. As noted above, Anacapa is aware through non-AEO discovery that ADC rejected SPC Generation 2 enclosure orders. (Baer Aff. Ex. 62, at 50-51). Document number 11003 is largely a rehashing of the AEO bullet points of ADC 10715-10721.[1] In addition, the exact same information about the final sale of the T-Max enclosure is found in deposition testimony in which Mr. Laetsch was present. (Baer Supp'l Aff. Ex. 83, at 33-36, 53-54). Moreover, ADC, by failing to make any argument concerning ADC 11003 other than stating such information is highly sensitive, has failed to carrying its burden of establishing the propriety of the AEO designation. Therefore, ADC 11002-11003 cannot remain AEO.

(10) ADC documents with Bates numbers 11058-11060 concern sales, pricing, and customer information. ADC 11058 is the commission payment to ADC from SPC for Generation 2 enclosure sales. ADC 11059 is a customer specific, price specific, product specific, and commission schedule specific list. ADC 11060 is a list of three customers that purchased

---

[1] Importantly, in supra Part III(A)(7), this Court held that the bullet points in ADC 10715-10721 cannot remain AEO.

Generation 2 enclosures.

ADC 11059 is exactly the type of information that qualifies for an AEO designation. It is customer-specific sales data that is highly confidential because, quite obviously, a business who knows the product, quantity, and pricing information that its competitors are using with customers can use that information to undercut a competitor's competitive position. Here, however, the issue is a closer call because Anacapa has a non-AEO list, in some ways a more extensive list, of SPC's Generation 2 enclosure sales including pricing information. Anacapa's list, however, does not contain all of the same pricing information as ADC 11059. Therefore, since these documents are at the core of AEO type documents, the similarity of Anacapa's sales list does not out weigh the propriety of the AEO designation. Accordingly, ADC 11059 can remain AEO.

ADC 11058 is the commission payment to ADC from SPC for Generation 2 enclosure sales. This would appear to qualify as a non-public business transaction and is intertwined with the highly sensitive sales list in ADC 11059. Therefore, it is appropriately designated AEO.

ADC 11060 cannot remain AEO because Anacapa has the information contained therein through non-AEO documents. (Baer Supp'l Aff. Ex. 84).

(11) ADC document with Bates number 11061 is part of a letter from William Weimer to SPC and SPC's counsel. ADC 11061 contains mere generalities and is not highly sensitive. Therefore, ADC 11061 cannot remain AEO.

(12) ADC documents with Bates numbers 11144-11147 concern a letter from William Weimer to SPC and SPC's counsel about rejected Generation 2 enclosure orders. As noted, Anacapa is already aware, through non-AEO testimony and with Mr. Laetsch present, that ADC

has been rejecting orders for the Generation 2 enclosure made by SPC. (Baer Aff. Ex. 62, at 50-51). Anacapa is also aware, through non-AEO discovery, that SPC sells the Generation 2 enclosure to all the customers listed in ADC 11146-47. (Baer Supp'l Aff. Ex. 84). Moreover, ADC, by failing to make any argument regarding 11144-11147, has failed to carrying its burden of establishing the propriety of the AEO designation. Therefore, ADC 11144-11147 cannot remain AEO.

**B. Challenged Deposition Testimony**

(1) The challenged William Weimer deposition testimony (Baer Supp'l Aff. Ex. 87, at p. 62-63: line 3) is not highly sensitive information because the same information was discussed during a deposition in which Mr. Laetsch was present. (Baer. Ex. 88). Therefore, Weimer deposition testimony page 62 through page 63 line 3 cannot remain AEO.

(2) Gregory Daily deposition testimony (Baer Supp'l Aff. Ex. 89) is the subject of multiple AEO challenges.

(A) Page 23-24 concerns testimony about the firing of an ADC employee. This information does not fall into one of the categories of information that can be designated AEO. Moreover, ADC, by failing to make any argument other than stating such information is highly sensitive, has failed to carrying its burden of establishing the propriety of the AEO designation. Therefore, Daily deposition page 23-24 cannot remain AEO.

(B) Page 42 concerns testimony about ADC asking SPC to provide documentation that SPC stopped selling the T-Max enclosure. This testimony contains nothing highly sensitive. In addition, it merely discusses a document that, as noted supra Part III(A)(7), is not AEO. Finally, ADC, by failing to make any argument other than stating such information

is highly sensitive, has failed to carrying its burden of establishing the propriety of the AEO designation. Therefore, Daily deposition page 42 cannot remain AEO

(C) Page 47 lines 23-24 simply states "agreement between SPC and Trinet Communications, Inc., correct?" This is not highly sensitive information because Anacapa, through non-AEO discovery, already knows that SPC and Trinet have a distribution agreement. (Baer Supp'l Aff. Ex. 82). Moreover, ADC, by failing to make any argument other than stating such information is highly sensitive, has failed to carrying its burden of establishing the propriety of the AEO designation. Therefore, Daily deposition page 47 lines 23-24 cannot remain AEO.

(D) Page 50 discusses whether Trinet is a distributor or customer of SPC. This is not highly sensitive information because Anacapa, through non-AEO discovery, already knows that SPC and Trinet have a distribution agreement, (Baer Supp'l Aff. Ex. 82), and/or that Trinet buys the Generation 2 enclosure from SPC. (Baer Supp'l Aff. Ex. 84). Moreover, ADC, by failing to make any argument other than stating such information is highly sensitive, has failed to carrying its burden of establishing the propriety of the AEO designation. Therefore, Daily deposition page 50 cannot remain AEO.

(E) Page 54 through page 55 line 1 discusses in extremely general terms that Mr. Daily is going to review his business model. See, e.g., Baer Supp'l Aff. Ex. 89, at pp. 54-55: lines 23-1 ("A program review involves the full business relationship from the top-line issues of price to the bottom-line issues of cost, sales issues, marketing issues, brand issues."). This general information is clearly not highly sensitive. Moreover, ADC, by failing to make any argument other than stating such information is highly sensitive, has failed to carrying its burden of establishing the propriety of the AEO designation. Therefore, Daily deposition page 54

through page 55 line 1 cannot remain AEO.

(F) Page 73 discusses the same employee firing as discussed supra Part III(B)(2)(A). For the same reasons as noted supra Part III(B)(2)(A), Daily deposition page 73 cannot remain AEO.

(G) Page 156 discusses the canceling of an order release on a Trinet purchase. It is unclear why this material is so highly sensitive as to warrant an AEO designation considering Anacapa already knows that SPC and Trinet have a distribution agreement, (Baer Supp'l Aff. Ex. 82), and that Trinet buys the Generation 2 enclosure from SPC. (Baer Supp'l Aff. Ex. 84). Moreover, ADC, by failing to make any argument other than stating such information is highly sensitive, has failed to carrying its burden of establishing the propriety of the AEO designation. Therefore, Daily deposition page 156 cannot remain AEO.

(H) Page 158 line 22 through page 170 discusses why ADC was rejecting SPC orders. Specifically, the testimony discusses a letter from William Weimer to SPC and SPC's counsel. See ADC 11061-11063. Anacapa concedes that document numbers 11062-11063 are properly designated AEO. (Pl.'s Mem. in Opposition to Def.'s Mot. to Maintain AEO Designation, at 14). The challenged deposition testimony discusses in detail, even quoting large portions of, the documents that Anacapa has conceded are properly designated AEO. Any portion of the testimony not necessarily discussing ADC 11062-11063 is nevertheless intertwined with the discussion of ADC 11062-11063, and this Court will not endeavor to parse through each phrase or sentence. Therefore, Daily deposition testimony page 158 line 22 through page 170 is properly designated AEO.

(I) Page 173 lines 12-21 concerns a question of whether William Weimer's audit

of SPC led ADC to reject orders placed by SPC. This testimony is not highly sensitive because the question was asked, and Mr. Daily's response was ultimately "I don't recall." (Baer Supp'l Aff. Ex. 89, at 173: line 17). Moreover, ADC, by failing to make any argument other than stating such information is highly sensitive, has failed to carrying its burden of establishing the propriety of the AEO designation. Therefore, Daily deposition testimony page 173 lines 12-21 cannot remain AEO.

(J) Page 177 line 19 through page 178 line 2 is merely a quotation of ADC 11002. ADC 11002, as noted supra Part III(A)(9), cannot remain AEO. Therefore, Daily deposition testimony page 177 line 19 through 178 line 2, which quotes ADC 11002, cannot remain AEO.

(K) Page 178 line 22 through page 181 line 9 concerns whether and/or when T-Max enclosures where sold for end-of-the-life parts. This information is not highly sensitive because the same information is discussed elsewhere with Mr. Laetsch present. (Baer Supp'l Aff. Ex. 83, at pp. 33-36, 53-54). Moreover, ADC, by failing to make any argument other than stating such information is highly sensitive, has failed to carrying its burden of establishing the propriety of the AEO designation. Therefore, Daily deposition testimony page 178 line 22 through page 181 line 9 cannot remain AEO.

(L) Page 220 lines 9-19 concerns a large investment in SPC and an acquisition by SPC. This information appears to fall into the category of a non-public business transaction. It is not entirely clear from the parties why this information should be considered highly sensitive. However, an acquisition or large investment by a business can, for example, signal the strengthening of a current market position or signal a change in strategy as a first-mover. Such information, especially if intended to be non-public, is clearly valuable to a competitor who

would want to solidify their own positions or counter a first-mover strategy. Therefore, since this information arguably falls into the core of AEO information, Daily deposition testimony page 220 lines 9-19 shall remain AEO.

(M) Page 223 line 24 concerns the same large investment discussed immediately above, supra Part III(B)(2)(L). For the same reasons as discussed above, Daily deposition testimony page 223 line 24 shall remain AEO.

**THEREFORE, IT IS HEREBY ORDERED that:**

1. Plaintiff's Motion for a Revised Scheduling Order (Doc. No. 60) is **GRANTED IN PART AND DENIED IN PART**. The parties shall contact this Court's chambers and submit proposed scheduling orders in accordance the directions given in Part I of this Order.

2. Defendant's Motion to Compel Production of Documents (Doc. No. 61-1) is **DENIED AS MOOT**.

3. Defendant's Motion to Maintain Attorneys'-Eyes-Only Designation Under Stipulated Protective Order (Doc. No. 61-2) is **GRANTED IN PART AND DENIED IN PART**. The Attorneys'-Eyes-Only designation shall remain or be lifted from the challenged documents/testimony in accordance with the specific directions contained herein.

Dated: January 22, 2003

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge